HENRY A. TAYLOR AND OTHERS, AS TEMPORARY ADMINISTRA-TORS OF CHRISTOPHER MEYER, DECEASED, RESPONDENTS, *v.* THOMAS S. BLAIR AND THOMAS STRUTHERS, APPELLANTS.

*Tender of transfer of stock—when necessary under a contract for its repurchase at the option of the holder thereof at a particular time.*

Upon the purchase of some 500 shares of stock by one Meyer, on April 4, 1873, an agreement was made by certain parties "that if, at the end of one year from this date, the said Meyer shall desire to sell the said shares at the price paid for the same by him, we will purchase the same and pay to him the amount paid by him on the same, with interest."

*Held,* that it was incumbent upon Meyer, in order to sustain an action brought to recover the amount paid for such stock, with interest, to prove that, on the 4th of April, 1874, he offered or tendered a transfer of such shares to the parties agreeing to purchase the same.

That the mere fact that such parties resided in the State of Pennsylvania, where they also resided at the time the agreement was entered into, did not discharge Meyer from the obligation to perform such duty.

APPEAL by the defendants, Thomas S. Blair and Thomas Struthers, from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 10th day of December, 1887, in favor of the plaintiff, after a trial before the court and a jury at the New York Circuit, at which a verdict was rendered, under the direction of the court, in favor of the plaintiff. The action was commenced by Christopher Meyer, who died during its pendency, and it was revived in favor of his personal representatives.

*S. P. Nash,* for the appellants.

*Louis C. Waehner,* for the respondents.

DANIELS, J.:

The verdict was directed for the amount held to be payable on a contract entered into by the defendants with the intestate. He had subscribed for 500 shares of the capital stock of the Blair Iron and Steel Company, and paid upon his subscription the sum of $10,000, included with interest in the verdict. To induce him to purchase these shares the defendants subscribed and delivered to him this contract:

" Whereas, Christopher Meyer has purchased six hundred shares of the stock of the Blair Iron and Steel Company, sold by A. S. Diven, trustee of said company, at the price of fifty dollars per share.

" Now we, the undersigned, in consideration of one dollar to us in hand paid, the receipt whereof is hereby acknowledged, do hereby agree that, if at the end of one year from this date, the said Meyer shall desire to sell the said shares at the price paid for the same by him, we will purchase the same and pay to him the amount paid by him on the same, with interest at the rate of seven per cent per annum.

" NEW YORK, *April* 4, 1873.

" THOMAS S. BLAIR.

" THOMAS STRUTHERS."

And on the 7th of March, 1874, under his authority, a copy of this letter was delivered to each of the defendants:

" NEW YORK, *Mar.* 7, 1874.

" Mr. THOMAS S. BLAIR and Mr. T. STRUTHERS:

" GENTLEMEN.—Your agreement, dated April 4, 1873, to purchase from me six hundred shares of the stock of the Blair Iron and Steel Company at the price I paid for the same, with interest at seven per cent, will expire April 4, 1874.

" I hereby notify you that I desire to sell the said shares under this agreement, and will be ready to receive the amount at any time you will name prior to April 4, 1874.

" Yours, very truly,

" CHRISTOPHER MEYER.

". By A. G. T., Jr."

And on the 4th of April, 1874, the day upon which the agreement was to be performed, the defendant Struthers wrote to the intestate, a letter, in which he stated, so far as its contents are in the least degree material to this controversy:

" I was sorry to learn through notice by Mr. Taylor from you that you felt disposed to place yourself in position to sever your connection with the Blair Iron and Steel Company by parting with your stock. I hope you have not resolved absolutely on taking that step. I thought I had, by encouraging you to subscribe for that

stock, done a good thing for an esteemed friend, and I think so still. Mr. Foster says he did not understand you to assign any reason for not paying the call on stock about which he spoke to you, except the severe loss you had sustained in the bank disaster. I hope, however, the force of that reason has passed and that your financial position is again right. I felt confident that your ample means would soon raise you above that trouble."

The Blair Iron and Steel Company had an office in the city of New York, which, when they were there, was stated by the intestate, in evidence given by him upon a preceding trial, to have been the head-quarters of these defendants, one of whom was the president of the company and the other one of its trustees. The intestate employed the witnesses Henry A. Taylor and Albert G. Thorp to act for him in and about the performance of the agreement delivered to him by the defendants. For this purpose they endeavored to find the defendants at the office of the company, but failed to meet them there after the 7th of March, 1874. The witness Thorp was at the office on the 4th of April, 1874, and inquired for the defendants, but had no papers with him by which he could transfer the shares; neither was any offer made by him to the person found in charge of the office, in the absence of the defendants, to transfer the stock to them on the payment of the $10,000 and interest. And no offer to that effect was any where made until some time in September succeeding the expiration of the year mentioned in the agreement. At the time designated in it for its performance there was, consequently, no offer or tender made on behalf of the intestate, who was then living, to perform on his part by transferring or offering a transfer of the shares to the defendants.

The complaint did allege that at the end of one year from the said 4th day of April, 1873, the plaintiff Meyer did desire to sell the said shares at the price paid for the same by him, and duly notified the said defendants of such his desire, and requested the said defendants to accept and receive the said shares and pay to him the amount paid on the same by him; but the said defendants neglected and refused, and still do wholly neglect and refuse so to do.

And the position has been taken, on behalf of the plaintiffs, that the defendants have not denied that they had been requested on the 4th of April, 1874, to accept and receive the shares and pay the

plaintiff the amount paid on the same by him. But this is clearly a mistake, for by their answer they have denied that the plaintiff at the end of one year from said 4th day of April, 1873, duly or otherwise notified them of his desire to sell the said shares at the price paid for them by him, or requested them to accept and receive said shares and pay him the price paid for the same by him. And that they neglected or refused to accept and receive the said shares, or pay to the plaintiff Meyer the price paid for the same by him, except for the reasons above set forth and the reasons hereinafter set forth in the second, third and fourth defenses of this the defendants' answer.

These denials, as they were not afterwards changed, completely put in issue the averment, on the part of the plaintiff that the defendants had been requested to accept and receive the shares and pay the amount which had been paid by him upon them. And before a recovery could be had in the action it was incumbent upon the present plaintiffs to prove that on the 4th of April, 1874, Meyer offered or tendered a transfer of these shares to the defendants. That was a condition precedent, according to the terms of the agreement, upon which the right to recover this money depended.

This subject and the authorities bearing upon it were very minutely considered in *Lester* v. *Jewett* (1 Kern., 453), where it was held that an averment and proof of tender or offer to sell and transfer the stock to the party there contracting to purchase it at the expiration of the time, was essential to maintain the right of the other party to recover upon such a contract. And this has been followed in *National Oleo, etc., Company* v. *Jackson* (21 N. Y. St. Rep., 458); *Rutty* v. *Consolidated, etc., Company* (52 Hun, 492), and *Pope* v. *Terre Haute, etc., Company* (107 N. Y., 61).

The plaintiffs have endeavored to relieve themselves from the obligation of proving a compliance with this rule by reason of the fact that the defendants were absent from the State of New York at the time fixed for the final performance of the agreement. And so they were, but the proof establishes the fact that they resided in the State of Pennsylvania at the time when the agreement was entered into, and that the intestate was aware of the fact that they did then reside in that State. And, accordingly, Meyer was bound either to apply to them for the performance of the agreement at their places of resi-

dence, or at least, if that would have been sufficient, to make the offer or tender required by the law at their office or place of business in the city of New York. But in each respect there was an entire failure on his part, for no tender or offer of the shares was made at the office nor to the defendants personally.

In the case of *Hale* v. *Patton* (60 N. Y., 233) the court held that the defendant was not bound to follow the plaintiff out of the State to pay interest which became due upon a mortgage in order to prevent the principal from becoming due because of a default in payment of the interest for the period of thirty days. But there the plaintiff was a resident of the State, and had absented himself from it at the time when the interest matured. And all that the court held was that readiness, under these circumstances, on the part of the debtor to pay the interest when it became due was sufficient to avoid the principal from becoming due on account of a default of payment. The case contains nothing relieving the intestate from making a tender or offer of these shares either to the defendants personally at their places of residence in the State of Pennsylvania, or at least at their office in the city of New York.

The judgment should accordingly be reversed and a new trial ordered, with costs to the defendants to abide the event.

Van Brunt, P. J., and Brady, J., concurred.

Judgment reversed and new trial ordered, with costs to the defendants to abide the event.