HENRY WEYAND et al., Respondents, *v.* THE PARK TER-
RACE COMPANY, Appellant, Impleaded with Others.

**Debtor and creditor — place of payment of indebtedness.**

1. Although it is a general rule that a debtor must seek his cred-
itor to make payment of his indebtedness, the parties to a contract
may provide therein where payments thereon shall be made.

2. Where a contract is made outside of the state in which the
promisor resides and it does not, either by express terms or by fair
inference, provide where the same is to be performed it will be pre-
sumed that the parties intend that it shall be performed at the place
where it is made, and the promisor must provide at such place to
make the payments thereon.

3. Where a contract is made in this state either with a person then
resident of this state, who afterwards removes therefrom, or with a
non-resident of this state, it is the duty of the promisee to provide
a place in this state where payments thereon can be made, and it is
not necessary for the debtor to go beyond the bounds of this state
to make payments thereon.

4. English and American authorities on the subject collated and
considered.

*Weyand* v. *Park Terrace Co.*, 135 App. Div. 821, reversed.

(Argued March 29, 1911; decided May 30, 1911.)

APPEAL from a judgment of the Appellate Division of
the Supreme Court in the second judicial department,
entered January 21, 1910, which affirmed a final judg-
ment of foreclosure and sale entered upon an interlocu-
tory judgment in favor of plaintiff directed by the Appel-
late Division upon its reversal of a prior judgment of
Special Term dismissing the complaint.

On the 29th day of January, 1907, the plaintiffs conveyed
to the defendant Randall certain real property in the
county of Queens, in this state, and took from said Ran-
dall a bond of $11,000 with a mortgage on said real prop-
erty as collateral thereto as a part of the purchase price
thereof. Said bond and mortgage were each dated Jan-
uary 29, 1907, and the amount thereof was by the terms

of each payable by said Randall on the 13th day of February, 1910, with interest thereon to be computed from the 13th day of February, 1907, at the rate of five and one-half per cent per annum, and to be paid on the 13th day of August next ensuing the date thereof, and semi-annually thereafter.  No place for the payment of interest or principal was expressly stated in the bond or mortgage.

It was further provided therein that the principal sum of $11,000 should become due at the plaintiffs' option after default in the payment of any installment of interest as therein provided for. thirty days or after default in the payment of any tax or assessment for sixty days.

The interest which fell due thereon August 13, 1907, was not paid within thirty days after it became due.   On the 15th day of July, 1907, the mortgaged property was conveyed to the defendant, The Park Terrace Company, a domestic corporation.   At all times subsequent to the 12th day of August, 1907, the defendant, The Park Terrace Company, was ready, willing and able to pay the interest that became due on August 13, 1907, at any place within the state of New York.   The plaintiffs at all times subsequent to said 12th day of August, 1907, resided in Waterbury, Connecticut, and had no agent to whom the interest could be paid within the state of New York.   The interest not being paid to the plaintiffs within thirty days after August 13, 1907, they elected that the whole principal sum be immediately due and payable, and on or about the 26th day of September, 1907, said The Park Terrace Company had notice and knowledge of such election. The defendant, The Park Terrace Company, thereafter tendered said interest to the plaintiffs at Waterbury, but. the plaintiffs refused to receive the same and this action was brought to foreclose said mortgage.   At the trial the question litigated was the right of the plaintiffs to declare the principal of said bond and mortgage due and payable by reason of the failure of the defendants to pay said interest within thirty days after

August 13, 1907, or tender the same at Waterbury.     At
the Special Term plaintiffs' complaint was dismissed on
the merits.     An appeal was taken from the judgment
entered thereon to said Appellate Division where the
judgment was reversed upon questions of law only.
(*Weyand* v. *Randall,* 131 App. Div. 167.)     An interlocu-
tory judgment was entered and a reference was granted
to compute the amount due.     A report was made by the
referee and final judgment was thereafter entered for the
foreclosure and sale of the mortgaged property.     An
appeal was taken therefrom to the Appellate Division,
where such judgment was unanimously affirmed.     (*Wey-
and* v. *Park Terrace Co.,* 135 App. Div. 821.)     Further
facts appear in the opinion.     .

*H. Schieffelin Sayers* for appellant.     The owner need
not follow the mortgagee out of the state.     (Thomas on
Mort. [2d ed.] 157, § 231; *Hale* v. *Patton,* 60 N. Y. 236;
*Houbie* v. *Volkening,* 49 How. Pr. 169; *Olmstead* v.
*Mihle,* 18 Wkly. Dig. 486; *Smith* v. *Smith,* 25 Wend.
405; *Fessard* v. *Mugnier,* 18 C. B. [N. S.] 286.)

*Frederick S. Jackson* for respondents.     The matters
set up to excuse the default in payment of the interest
were insufficient in law.     (*Taylor* v. *Blair,* 59 Hun, 347,
351; *Lumberman's Ins. Co.* v. *Meyer,* 197 U. S. 407, 417;
*Sheldon* v. *Haxtun,* 91 N. Y. 124; *Taylor* v. *Snyder,* 3
Den. 145; *Spies* v. *Gilmore,* 1 N. Y. 321; *Foster* v.
*Julien,* 24 N. Y. 28; *Adams* v. *Leland,* 30 N. Y. 309;
*Stoker* v. *Cogswell,* 25 How. Pr. 267; *Bank of Orleans*
v. *Gray,* 78 Mass. 469; *McGruder* v. *Bank of Wash.,* 9
Wheat. 598.)

CHASE, J.     The fact that contracts between residents of
different states and countries are and have been for many
years very numerous, and that there are comparatively
few reported decisions affecting the question involved

in this action, indicates that there have been for a long period of time generally recognized rules governing the place where payments pursuant to contract must be made.

The intention of the parties to a contract as to the place where payments are to be made usually appears by express provision, or necessary inference in the contract itself. In cases where the intention does not thus appear, the rules governing the place of such payments are not so important as that they shall be certain and not shifting or subject to misunderstanding. The rules heretofore established and asserted are, therefore, important to determine what decision should be made in this case.

The subject of the place of payment was discussed to some extent by ancient writers, and there are a few reported cases in which the question has been considered, from some of each we will quote.

Coke on Littleton (first American from the last London edition, 1827, vol. 2, star page 47), quoting from Littleton, says: " Also, upon such case of feoffment in mortgage, a question has been demanded in what place the feoffor is bound to tender the money to the feoffee at the day appointed etc. And some have said, upon the land so holden in mortgage, because the condition is depending upon the land. And they have said, that if the feoffor be upon the land there ready to pay the money to the feoffee at the day set and the feoffee be not then there, then the feoffor is quit and excused of the payment of the money, for that no default is in him. But it seemeth to some that the law is contrary, and that default is in him; for he is bound to seek the feoffee if he be then in any other place within the realm of England. As if a man be bound in an obligation of 20 pound upon condition indorsed upon the same obligation, that if he pay to him, to whom the obligation is made, at such a day 10 pound, then the obligation of 20 pound shall lose his force, and be holden for nothing; in this case it behoveth

him that made the obligation to seek him to whom the obligation is made, if he be in England, and at the day set to tender unto him the said 10 pound, otherwise he shall forfeit the sum of 20 pound comprised within the obligation, etc. And so it seemeth in the other case, etc. * * * And it seems to them, that it shall be more properly said, that the estate of the land is depending upon the condition, than to say that the condition is depending upon the land, etc."

And Coke, commenting upon such quotation, approves the statement that the feoffor's obligation to seek the feoffee does not extend without the realm of the kingdom. And in connection therewith he says: "'Within the realm of England.' For if he be out of the realm of England he is not bound to seek him, or to go out of the realm unto him."

Referring to the same section of Littleton it is said in Shepard's Touchstone (star page 378): "If the condition of an obligation be to pay money, or to do any like transitory act to the obligee on a day certain, but no place is set down where it shall be done; in this case it must be done to the person of the obligee, wheresoever he be; and for this purpose, the obligor must at his peril seek out the obligee, if he be *intra quattuor maria,* otherwise the obligation is forfeit; but if the obligee be not within the kingdom at the time when the thing is to be done, he is not bound to seek him, so neither is the obligation forfeit for not doing of the thing."

The common-law rule in England did not in any way prevent making a contract expressly stating where the obligation should be performed, and in a case where a contract was made out of the kingdom, it was by the English courts in the absence of an express agreement held that the intention of the parties was to perform the contract at the place in which the contract was made.

In *Fessard* v. *Mugnier* (18 Com. Bench [N. S.], 286) the chief judge delivering the opinion of the court says: "The

authorities seem to me to establish this distinction: that, if the plaintiff was in England when the contract was made, and went beyond the seas afterwards, the law would not cast upon the defendant the duty of following him for the purpose of paying or tendering the money. The contract in that case would be construed to mean, that the debtor would on the day named pay the creditor the money, provided he was then in England ready to receive it. But where, as here, the contract was made in Paris, and the plaintiff was residing in Paris at the time of the execution of the deed and at the time of its registration his absence abroad affords no excuse for the defendant's not tendering him the money." It will be seen that the place of making the contract and not the residence of the creditor determines whether the debtor is required to seek the creditor beyond the bounds of the kingdom to make payment of the obligation.

It is always competent for the parties to a contract to provide thereby in express terms the place where payments which shall become due thereon are to be made. While it is a rule of quite general acceptation that a debtor must seek his creditor to pay his indebtedness, it is always open to the parties to show by the express terms of the contract or by fair inference therefrom that it was the intention of the parties to pay at a particular place or within a particular state or country. The state or country in which the contract is made has an important or perhaps controlling bearing in determining whether a debtor is required to go beyond the bounds of the state or country of his residence to make payments upon the contract.

In *De Wolf* v. *Johnson* (23 U. S. [10 Wheaton] 367) a contract for the loan of money was made in Rhode Island and secured by a mortgage upon real property in Kentucky. The court referring to the contract say: "With regard to the locality of the contract of 1815 we have no doubt that it must be governed by the law of Rhode

Island.  The proof is positive that it was entered into there, and there is nothing that can raise a question but the circumstance of its making a part of the contract, that it should be secured by conveyances of Kentucky land.  But the point is established, that the mere taking of foreign security does not alter the locality of the contract with regard to the legal interest.  Taking foreign security does not necessarily draw after it the consequence that the contract is to be fulfilled where the security is taken.  The legal fulfillment of a contract of loan, on the part of the borrower, in repayment of the money, and the security given is but the means of securing what he has contracted for, which, in the eye of the law, is to pay where he borrows, unless another place of payment be expressly designated by the contract.  No tender would have been effectual to discharge the mortgagee, unless made in Rhode Island.  On a bill to redeem, a court of equity would not have listened to the idea of calling the mortgagee to Kentucky in order to receive a tender." (*Allshouse* v. *Ramsay*, 6 Whart. [Pa.] 331.)

If the contract of loan in the action now under consideration had been made in Waterbury the language quoted from the opinion in *De Wolf* v. *Johnson* would be peculiarly applicable.  While the findings in the action under consideration do not show that the contract was executed in the state of New York, neither do they show that the plaintiffs, at the time of the execution of the contract, were residents of Waterbury.  It appears, however, from the record that the plaintiffs were residents of Waterbury when the contract was made, and also that the bond and mortgage constituting the contract between the parties were executed and delivered in this state as a part of the transaction in the transfer of the real property described from the plaintiffs to the defendant Randall, and as security for the payment of a part of the purchase price of said real property.  The presumption that the parties to a contract intend that the borrower shall pay where he borrows

has been quite generally sustained, at least to the extent of inferring an intent to pay within the state or country where the contract requiring the payment is made. It appears from the quotation from *Fessard* v. *Mugnier* (*supra*) that such is the rule in England. The case of *Chapman* v. *Robertson* (6 Paige, 627), so far as it holds that the place where the mortgaged property is situated governs in determining the place of payment as against the place where a loan is made which is secured by the mortgage on such property, has been frequently criticised. (Story on Conflict of Laws [8th ed.], 402; *Cope* v. *Alden*, 53 Barb. 350; Kent's Comm. vol. 2, 461, note b; *Curtis* v. *Leavitt*, 15 N. Y. 9, 89; *Dickinson* v. *Edwards*, 77 N. Y. 573; *Manhattan Life Ins. Co.* v. *Johnson*, 188 N. Y. 108, 112.)

It was said in this state early in the last century by Cowen in his treatise that "If a place of payment or performance be mentioned in the contract the tender can only be made there. If no place be mentioned for paying a sum in gross it must be tendered to the party personally if in the state, but the tenderor is not bound to seek the party out of the state." (*Allshouse* v. *Ramsay, supra; Littell* v. *Nichols,* Hardin [Ky.], 66; *Tasker* v. *Bartlett,* 5 Cush. 359; *King* v. *Finch,* 60 Ind. 423; *Galloway* v. *Standard Fire Ins. Co.,* 45 W. Va. 237; *Gill* v. *Bradley,* 21 Minn. 15.)

It is quite generally asserted in the encyclopædias and text books that the rule is well settled that a debtor is not required to seek a creditor out of the state. (Am. & Eng. Ency. of Law, vol. 22, page 533, and cases cited; Cyc. vol. 30, page 1185; Thomas on Mortgages [2d ed.], sec. 231; Beach Modern Law of Contracts, sec. 329; 3 Paige on Contracts, secs. 329, 1420.)

The question was considered in this court in *Hale* v. *Patton* (60 N. Y. 233) and it was by that case established in this state that where a contract is made within the state and the creditor, between the time of entering into

the contract and the time when the payment becomes due thereon, departs from the state, the debtor is not required to follow the creditor for the purpose of paying the indebtedness.   The court in that case say: "In general a debtor, who is indebted on a money obligation, is bound, if no place of payment is specified in the contract, to seek the creditor and make payment to him personally.   But this rule is·subject to the exception that if the creditor is out of the state when payment is to be made, the debtor is not obliged to follow him, but readiness to pay within the state in that case will be as effectual as actual payment to save a forfeiture. . (Co. Litt. 304, 2; *Smith* v. *Smith*, 25 Wend. 405; *Allshouse* v. *Ramsay*, 6 Whart. [Pa.] 331; *Southworth* v. *Smith*, 7 Cush. 391; *Tasker* v. *Bartlett*, 5 id. 359.)   The judge, before whom the case was tried, found that the plaintiff was absent from the state from the 8th of January, 1873, and that the defendant, during the whole of that month, had the money and was ready and willing to pay the interest.   This, within the general rule, excused the defendant from actual performance of the condition."   (p. 236.)

In *Houbie* v. *Volkening* (49 How. Pr. 169) the court say: "If a contract is made in this state, between residents in this state, the presumption is that it is to be performed within this state; and it would be a great hardship to compel the debtor to travel all the world over to make his tender.   The rule has long been established in England that the debtor was not bound to follow his creditor beyond the four seas to make a tender, and the same rule has been adopted in our state." (*Grussy* v. *Schneider*, 55 How. Pr., 188.)   The Appellate Division cited as authority for a contrary conclusion *Taylor* v. *Blair* (59 Hun, 347) and *Penn. Lumbermen's Mut. F. Insurance Co.* v. *Meyer* (197 U. S. 407).   In the *Taylor* v. *Blair* case there was an agreement in connection with the purchase of certain shares of stock, that at the end of one year from the date of the purchase, if the plaintiff's intestate desired to sell the shares

at the price paid for them, the defendants would purchase the same and pay to the plaintiff's intestate the amount paid by him for the same, with interest. It was in that action held that it was incumbent upon the plaintiff to tender a transfer of said shares to the parties agreeing to purchase the same. The defendants at the time the contract was made and at the time when it was necessary to make the tender resided in Pennsylvania, but the corporation whose stock was under consideration had an office in the city of New York, and one of the defendants, the president of said corporation, and the other of the defendants, one of its trustees, made the office of said corporation their headquarters in New York, and the case holds that nothing relieved the plaintiff's intestate from making a tender or offer of the shares of stock to the defendants personally at their place of residence in the state of Pennsylvania or at their office in the city of New York.

In the *Penn. Lumbermen's Mut. F. Ins. Co.* v. *Meyer* case the defendant was a resident of the state of New York and the insurance company was a foreign corporation with its office in Pennsylvania. The insurance policies upon which the action was brought were executed in Philadelphia and sent to Meyer in Rochester. The question involved in that case was whether the service of the summons within the state of New York upon a resident director of the defendant under the facts fully stated in the case constituted a valid service conferring jurisdiction on a Federal court sitting within the state of New York. The suggestion in the opinion that the language of this court in *Hale* v. *Patton* (*supra*) referred only to the subsequent absence of the creditor from the state which was his domicile when the contract was made was unnecessary to the decision in that case and is but an expression of opinion.

The rules relating to the place where payments should be made upon contract have been established by long usage and can be stated briefly as follows:

1. It is a general rule that a debtor must seek his creditor to make payment of his indebtedness.

2. The parties to a contract may provide therein where payments thereon shall be made.

3. Where a contract is made outside of the state in which the promisor resides, and it does not, either by express terms or by fair inference, provide where the same is to be performed it will be presumed that the parties intend that it shall be performed at the place where it is made, and the promisor must provide at such place to make the payments thereon.

4. Where a contract is made in this state either with a person then a resident of this state, who afterwards removes therefrom, or with a non-resident of this state, it is the duty of the promisee to provide a place in this state where payments can be made, and it is not necessary for the debtor to go beyond the bounds of this state to make payments thereon.

Where a person promises to pay specified amounts from time to time pursuant to a written contract, if he or the payee desire that the same be paid at a particular place, it is just as easy to specify in the instrument the place where, as the time when, such payments are to be made.

Other questions are suggested by the briefs and the arguments of counsel, but upon the findings of fact made at the trial at Special Term, which have never been reversed and are in no way assailed in this court, the judgment of the Special Term dismissing the plaintiff's complaint was right, and the judgments appealed from should be reversed and the judgment of the Special Term entered upon said findings dismissing said complaint should be affirmed, with costs to the appellant in this court and in the Appellate Division.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, WILLARD BARTLETT and COLLIN, JJ., concur.

Judgment accordingly.