12577

EMPIRE TRUST COMPANY v. PANOLA COTTON MILLS

(146 S. E., 612)

*Messrs. Grier, Park & McDonald,* for appellant,

*Messrs. Benet, Shand & McGowan,* for respondent, ▮

February 7, 1929.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action instituted by the plaintiff, in September, 1927, for the recovery of $1,180, with legal interest from March 11, 1926, the same being a retirement installment of 5 per cent. upon certain stock, 236 shares, in the defendant corporation, held by the plaintiff, which installment, or "curtailment," as it is called, was admittedly due by the defendant on August 1, 1925. The defendant contended that it had paid the same, or that the plaintiff was estopped from alleging the contrary by reason of its conduct, as will be explained.

It appears that on August 1, 1922, the defendant issued a certain kind of stock, guaranteed preferred stock, known as Class A, which provided for the retirement thereof upon the following terms: "The said Class A Guaranteed First Preferred Stock shall be retired as follows: five per cent. of the said stock in each of the first five years, and seven and one-half per cent. in each of the years following the first five years after the date from which dividends begin to run on said stock, so that in any event all of said stock shall be retired at the expiration of fifteen years from date of issue."

As it appeared, or was considered expedient if not necessary, certainly it was advisable that the payment of the retirement installments should be indorsed upon the certificates when made, the defendant adopted this method of making the payments and having the same indorsed upon the certificates: On or about the 1st of August of each year the defendant would deposit with the Commercial Bank of Green-

wood, upon a special deposit account, known as "Panola Stock Account," the exact sum of money required to pay all of the retirement installments due on August 1st; at the same time it would make and leave, with the Commercial Bank, a check payable to each stockholder entitled to the retirement installment, drawn upon the special deposit referred to, with an envelope addressed to him; it would then write to each stockholder, advising him that if he would send his certificate to the Commercial Bank, the proper indorsement would be made upon it, and it, with the check covering the 5 per cent. payment, would be promptly transmitted to him.

This method was pursued in reference to the retirement installments due August 1, 1923, and August 1, 1924, the plaintiff transmitting its certificates to the bank and receiving back the same properly indorsed with the payment, and checks therefor.

In reference to the installment due August 1, 1925, the defendant, by letter dated July 20, 1925 (received by the plaintiff on August 3, 1925), extended the same notice to the plaintiff. For some reason, not explained in the record, the plaintiff did not comply with the suggestion of the defendant, and did not send in its certificates to the bank until February, 1926, six months after its receipt of the letter of advice. The Commercial Bank failed in November, 1925, having in its hands or chargeable therewith, it is assumed, the installment which had been deposited for the benefit of the plaintiff. The question is: Who shall bear the loss?

Upon these conceded facts the trial Judge, before whom and a jury the case came on for trial, directed a verdict in favor of the plaintiff for the full amount claimed. From the judgment entered upon this verdict, the defendant has appealed.

Under the terms of the contract evidenced by the certificate of stock, the defendant was under obligation to pay to the plaintiff the retirement installment, if earned, on August 1, 1925. There is no question but that

it was earned and payment directed by the defendant. In the absence of an express or implied undertaking as to the place of payment, the general rule is that "a debtor who is indebted on a money obligation is bound, if no place of payment is specified in the contract, to seek the creditor and make payment to him personally." 21 R. C. L., 15. While this is the general rule, "it is always open to the parties to show by the express terms of the contract or by fair inference therefrom, that it was the intention of the parties to pay at a particular place or within a particular state or county. And the prevailing rule is that parol evidence of an agreement relative to the place of payment of money under a contract is admissible where the contract is silent in that respect, though there is authority to the contrary." 21 R. C. L., 15.

It has also been held, and we think correctly, that, "where a contract is made in a particular state * * * with a nonresident of that State, it is the duty *of the promisee* to provide a place in the State where payments can be made, and it is not necessary for the debtor to go beyond the bounds of the State to make payments thereon." 21 R. C. L., 16; *Weyand v. Park Terrace Co.*, 202 N. Y., 231, 95 N. E., 723, 36 L. R. A. (N. S.), 308, Ann. Cas., 1912-D, 1010; 22 A. & E. Enc., 533; 30 Cyc., 1185.

The evidence tends to show that the defendant relieved the plaintiff of this duty by itself providing the place of payment, and it also tends to show that the plaintiff recognized and consented to this arrangement, by the defendant, in carrying it out both in 1923 and 1924, and actually, though belated, attempting to carry it out in 1926.

The plaintiff had ample opportunity to object to the method adopted by the defendant; on the contrary the evidence tends to show that the method was approved.

The evidence tends to show also that, but for the negligent delay of the plaintiff in complying as it had done on two

previous occasions, with the letter of advice, the plaintiff would have received its money, as practically all of the other stockholders had. The matter is assimilated to the laches of a creditor in not presenting promptly a check accepted for the debt.

"The acceptance of a check implies an undertaking of due diligence in presenting it for payment. ' And if he from whom it is received sustains loss by want of such diligence, it will be held to operate as actual payment of the debt for which it was given." 21 R. C. L., 66.

We think that the case should have been submitted to the jury, and, if they had taken the defendant's view of the evidence, the verdict should have been in its favor. 'We have not considered the point elaborately argued by counsel for the defendant, that the plan adopted by the mill was in pursuance of its authority to adopt reasonable regulations in the conduct of its business, and express no opinion as to it.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE, STABLER and CARTER concur.