JAMES W. GERARD, Appellant, *v.* BANK OF NEW YORK AND TRUST COMPANY, Respondent.

First Department, April 6, 1934.

*Frank C. Laughlin* of counsel [*Stewart W. Bowers* with him on the brief; *Veronica T. Hyland*, attorney], for the appellant.

*John L. Merrill, Jr.*, of counsel [*George W. Martin* with him on the brief; *Emmet, Marvin & Martin*, attorneys], for the respondent.

TOWNLEY, J.    This action was brought to recover $2,861.16, the difference between the amount claimed by plaintiff to be due and the amount paid by the defendant on a " Trust of Accumulation." The agreement involved reads as follows:

## " Trust of Accumulation

" No. 2289

" $3,000.#

" The New York Life Insurance and Trust Company acknowledge to have received of James W. Gerard and Jenny A. Gerard Trustees for James W. Gerard No. 3, the principal sum of Three thousand Dollars upon the following Trust: That the said Company shall and will accumulate the said principal sum, by allowing Compound Interest thereon, at the rate of five (5%) per cent semi-annually; and the whole sum, principal and interest, so accumulated, to be paid to the said Trustees or the Survivors of them or their executors, administrators or assigns on demand.

" In Witness Whereof, the said Company have caused this declaration to be attested in their behalf by their President and Secretary, this eighteenth day of June in the year of our Lord one thousand eight hundred and seventy-four.

" (Signed)   HENRY PARISH,

" *President.*

" (Signed)   WM. MEIKLEHAM

" *Asst. Secretary."*

[U. S. Internal Revenue Stamp $5 attached.]

This trust was set up in 1874 and defendant carried out its terms without question until July 10, 1922. On that date defendant wrote a letter saying that the so-called trust of accumulation at the rate of five per cent, at that date amounted to about $31,000; that the company had decided to make its interest rates conform to those of the Clearing House banks and that, speaking of itself, " we should like to change the form of this high-rate interest deposit." The letter continued as follows: " If you would like to have the Trust continued, we should be glad to purchase securities for the account of this Trust, or invest the money in a desirable mortgage and permit the interest to accumulate as heretofore, making the usual charges only for commissions on income thereon. If, however, you would prefer to keep this in the present form, we shall have to lower the rate of interest to 3 per cent. from August 1, 1922, to conform with the rates which we are now allowing on idle principal of trust funds in our hands."

On the same day the plaintiff replied, taking the position that neither legally nor ethically did the defendant have any right at its pleasure to change the contract and lower the rate of interest to conform with anything whatever. On July 13, 1922, the defendant, still calling its obligation a " Trust of Accumulation," said: " By the terms of the certificate which was issued, this money

is payable on demand and I do not understand from our attorneys that this in any way creates a contract obligation to continue the payment of 5 per cent indefinitely. If you will read my letter more carefully, you will find we have agreed to invest this money in a mortgage eligible for Trusts, which will pay 5 to $5\frac{1}{2}$ per cent, the interest from which can be allowed to accumulate in the usual way, if you desire.

" If you have any letter in connection with this certificate which indicates that the Company considers itself bound to go on, regardless of rates of interest, for an indefinite number of years (forty-eight years having already elapsed since this contract was created) we should be very glad to have you send us a copy of it; but unless you have some such evidence in addition to the certificate, we are advised by counsel that there is no reason, either ethical or legal, why we should not lower the rate of interest to conform to present-day conditions, if you desire to have it kept in exactly the same form in which it was originally placed.

" Very truly yours,

" EDWIN G. MERRILL

" *President.*"

Plaintiff's answer to this declaration was a request for legal authority to " back up " what the plaintiff called its " unbusiness like, unethical, and as I believe, illegal action." At this point the defendant's attorneys on July 25, 1922, wrote construing the terms of the trust of accumulation, according to their opinion, as follows: " It strikes us that the instrument known as the trust of accumulation cannot be sustained as a trust, because there is no measuring life, and no measuring minority for the duration of the accumulation. The provision that the Trust Company is to allow interest at the rate of 5% indicates to our mind that the relation of debtor and creditor was established rather than trustee and *cestui*. It is a certificate of deposit, without a time limit, ' payable on demand.' The contract was, however, essentially unilateral. There was no promise made by the depositor; and the promise made by the Trust Company was an offer to pay compound interest each year while the deposit was continued. If an offer is of this divisible character it may be revoked not only before any acceptance, but also as to any portion of the offer still unaccepted even after acceptance of some of the series of transactions proposed by the offer. (See 1 Williston 99). █ * * * We believe that the instrument is payable on demand of either party, and in exercising its right to elect to terminate the arrangement we are

confident that the Trust Company is not violating the spirit or the letter of the law or of business ethics.

"As stated in the letter from the Trust Company to you, dated July 10, 1922, the rate of interest after August 1, 1922, will be reduced to 3%. If this is not acceptable to you the Trust Company will be prepared, of course, to pay over the amount of the deposit to the proper person forthwith, or, if you prefer, we will be glad to co-operate with you in any way you may suggest to obtain a construction in any appropriate court as to the rights and obligations of the interested parties under this certificate of deposit or trust for accumulation."

Nothing further occurred until June 16, 1926, when plaintiff finally demanded payment of the amount due up to that date at five per cent. After some hesitancy, a check was tendered for $36,248.43, an amount short by $2,861.16 of the total of accumulations to that date at the rate of five per cent.

Plaintiff testified that he said he would accept the check on account of the indebtedness and before delivering it to defendant indorsed the certificate as follows:
"*June* 16, 1926.

"I admit the receipt of $36,248.43 to be applied on account of the indebtedness covered by within note. I do not admit that this constitutes payment in full of the same.
"(Signed)   JAMES W. GERARD."

In spite of this reservation of a further claim, the defendant acquiesced in the form in which the indorsement was given and allowed the check to be cashed on that basis.

The learned justice at Trial Term dismissed the complaint on the ground that the acceptance of the check under the circumstances constituted an accord and satisfaction. On appeal, defendant, respondent, claims (1) an executed accord and satisfaction, (2) a discharge by surrender, (3) an instrument that if it were deemed to be a trust was void as an unlawful accumulation, and (4) the claim that further interest at five per cent was unnecessary in view of an alleged tender made in 1922.

If it is important to determine whether this contract was an instrument payable on demand or a trust to accumulate which was to continue until demand was made, we have no doubt that the parties themselves intended to create a trust of accumulation and that under chapter 75 of the Laws of 1830 the defendant had full capacity to do so. Section 2, subdivision 4, of that act empowered defendant to receive moneys in trust, to accumulate the same at such rate of interest as may be obtained or agreed on, or to allow such interest thereon as may be agreed on, not exceeding, in either

case, the legal rate. Whether this special power given by special act is modified by the statute limiting accumulations to the duration of an infancy (1 R. S. 773, §§ 3, 4) need not be decided. Defendant in 1922 did not take the position that it lacked the power to make the contract in litigation. We fail to see any provision justifying defendant in changing its terms at will.

Assuming, however, that there was an honest dispute as to the interpretation of the instrument, we find no facts constituting an accord and satisfaction. When the defendant made its payment and accepted the instrument with the express condition indorsed thereon, that the payment was only on account, it gained nothing by thereafter marking the certificate " Paid," without plaintiff's consent. It was said in *Gray* v. *Kaufman Dairy & I. C. Co.* (162 N. Y. 388, 397): " To create a contract by implication there must be an unequivocal and unqualified assertion of a right by one of the parties, and such silence by the other as to support the legal inference of his acquiescence."

In the present case there was an express repudiation by plaintiff of any intent to receive the check in full payment. The decisions in this State are uniform in holding that there is no accord and satisfaction if there is an acceptance of such a check with a reservation which is known to the party claiming an accord and satisfaction and is acquiesced in by it. (*Shepard* v. *City of New York*, 216 N. Y. 251; *Hudson* v. *Yonkers Fruit Co.*, 258 id. 168; *Eames Vacuum Brake Co.* v. *Prosser*, 157 id. 289.)

Assuming that defendant had the right to terminate the agreement at will, it could only have accomplished such termination by paying or tendering the amount due upon the certificate as of August 1, 1922. There is no claim of payment at that time and there is no evidence whatever to support the claim of tender or of waiver of tender. An examination of the correspondence cited above shows that the most that might indicate a tender was that defendant's attorneys wrote that the defendant " will be prepared, of course, to pay over the amount of the deposit to the proper person forthwith." These are not unmistakable words of tender; they are an invitation to further negotiations.

It has been repeatedly held that a valid tender can only be made by producing the actual money so that the creditor may be tempted to take it. (*Eddy* v. *Davis*, 116 N. Y. 247; *Leask* v. *Dew*, 102 App. Div. 529; affd., 184 N. Y. 599, and numerous other cases.) Under circumstances, also, where no place of payment was mentioned in the instrument, a tender should have been made at the residence of the creditor. (*Weyand* v. *Randall*, 131 App. Div. 167.)

We accordingly hold that the judgment should be reversed, with costs, and judgment directed for plaintiff as prayed for in the complaint, with interest and costs.

FINCH, P. J., MERRELL, GLENNON and UNTERMYER, JJ., concur.

Judgment reversed, with costs, and judgment directed in favor of the plaintiff as prayed for in the complaint, with interest and costs .