[No. 27645.  Department One.  February 24, 1940.]

C. M. KINGSTON, *Appellant*, v. WILLIAM ANDERSON, *Respondent*.[1]

*O. C. Moore* and *R. E. Lowe,* for appellant.

*Thos. A. E. Lally* and *John J. Lally,* for respondent.

MAIN, J.—This action was brought to recover damages for the refusal of the defendant to deliver to the

[1]Reported in 99 P. (2d) 630.

plaintiff corporate stock, which, it was alleged, he was obligated to do. The cause was tried to the court without a jury, and resulted in findings of fact from which it was concluded that there could be no recovery, and from a judgment entered dismissing the action, the plaintiff appealed.

The Alabama California Gold Mines Company was a corporation organized under the laws of this state. It owned a mine a short distance from Auburn, California. William Anderson, the respondent, was president of the corporation and manager of its operations, and resided in the state of California. The appellant, C. M. Kingston, resided at Grand Forks, British Columbia.

July 5, 1934, the respondent gave to the appellant an option on twenty-five thousand shares of the stock of the corporation, at ten cents per share. This option contract was made in this state, and is as follows:

"Dr. C. M. Kingston,                          July 5, 1934.
"Grand Forks, B. C.
"Dear Sir:
"We hereby offer you 25,000 shares of Alabama California Gold Mines Company stock on option at ten cents per share. The aforesaid option to be exercised on or before May 5, 1935.

"This option cancels any previous options given by me.                          By William Anderson."

It will be observed that the option, by its terms, would expire May 5, 1935. During the latter part of April of that year, the appellant informed the respondent, by telegram and letter, that he elected to exercise the option. No tender was made prior to the day that the option would expire, or at all.

The first question is whether the appellant was required to make a tender, inasmuch as the respondent was not in this state at the time, but was in California; in other words, the question is whether one must go beyond the boundaries of the state in which the con-

tract was made in order to make a tender where the contract is silent on the matter, as in the one now before us.

It has long been the common law of England that no one is required to go beyond the boundaries of the realm in order to make a tender. In 9 Bacon's Abridgment, 319, it is said:

"If no place be appointed for the payment of money in gross, a tender must, if the person to whom the money is due be in England, be made at the place where he is: but, if he be out of England, the party who ought to pay the money, is not bound to go out of the realm to seek him."

The rule in the United States is that, when a contract is made in one state for the payment of money and no place of payment is designated, the debtor is not bound to go to another state to tender the money to the creditor.

In *Gill v. Bradley*, 21 Minn. 15, after stating that a person's residence has an important bearing on the matter of tender, it was said:

"The rule at common law was, that if no place was appointed for the payment of money, (as appears to be the fact in the case at bar,) if the person to whom the money was due was out of England, the debtor was not bound to go out of the realm to make him a tender. Bacon's Abr. Tender, C. So in *Allshouse v. Ramsay*, 6 Whart. 331, it is held that when a contract is made in one state of the Union for the payment of money, and no place of payment is designated, the debtor is not bound to go to another state to tender the money to the creditor. To the same effect, *Smith v. Smith*, 25 Wend. 405; s. c. 2 Hill, 351; 2 Gr. Ev. § 601, note 3; *Tasker v. Bartlett*, 5 Cush. 359."

The cases of *Weyand v. Park Terrace Co.*, 202 N. Y. 231, 95 N. E. 723, Ann. Cas. 1912D, 1010, 36 L. R. A. (N. S.) 308; *Brown v. Hill*, 280 Pa. St. 1, 124 Atl. 184; and *Empire Trust Co. v. Panola Cotton Mills*, 149 S. C.

8, 146 S. E. 612, support the rule. So far as we are informed, there are no authorities to the contrary.

Neither the case of *King v. Finch,* 60 Ind. 420, nor *Gerard v. Bank of New York & Trust Co.,* 240 App. Div. 531, 270 N. Y. Supp. 835, supports the contention that the appellant was required to go to California and make the tender. The *King* case says that it was the duty of the debtor to seek his creditor and make a tender when the latter could be found in the state. The *Gerard* case merely says that a tender should be made at the residence of the creditor. In neither of those cases is there any reference made to a tender when the creditor is not within the state where the contract was made.

In Hunt on Tender, 343, § 312, after stating the rule, it is said: "The states, in this respect, are treated as foreign countries."

It thus appears that the appellant was not required to go to California and make tender.

The case of *Chambers v. Slethei,* 136 Wash. 84, 238 Pac. 924, is not controlling on the question of whether it was necessary for the appellant to go to the state of California and make a tender. The opinion in that case was, apparently, written on the implied assumption that a tender was necessary even when the optioner was outside of the state. The question, however, was not discussed there at all, and, apparently, it was not presented.

The next question is whether the election to exercise the option was conditional or absolute. The answer to this question depends upon the sentence in the telegram which reads: "Send shares to Old National Bank Spokane answer by wire." If that sentence should be construed as imposing a condition upon the acceptance, other than what appeared in the option, then it would be ineffective. *Martinson v. Carter,*

190 Wash. 502, 68 P. (2d) 1027. On the other hand, if the sentence does nothing more than make a request as to the manner in which the contract would be carried out, it does not impose a condition upon the acceptance. James on Option Contracts, 373, § 847; *Turner v. Mc-Cormick,* 56 W. Va. 161, 49 S. E. 28, 107 Am. St. 904, 67 L. R. A. 853; *Cates v. McNeil,* 169 Cal. 697, 147 Pac. 944. Under the authorities cited, the sentence quoted, with reference to sending the stock to the Old National Bank, related solely to the manner of carrying out the contract by such acceptance, and did not impose a condition. The acceptance was absolute.

The last question necessary to be considered is the question of damages. The respondent says that the appellant failed to prove the market value of the stock. Upon this question, the respondent offered no evidence, so the matter must be determined from the testimony offered by the appellant. A witness who had been engaged in a mining brokerage business in this state for a number of years was called by the appellant and testified that, in the spring of the year 1935, he was acquainted with the market value of the shares of the Alabama California Gold Mines Company; that, during the latter part of April and the first part of May of that year, that value was thirty-five cents per share; that, in June of the same year, it was forty-seven cents; that the stock has had a market value from that time up to the present time, continuously; and that the market value at the time the witness was testifying was from forty-two to forty-six cents. Under this evidence, there being no evidence to the contrary, the lowest market value fixed by the witness, near the time when the option would expire, was thirty-five cents per share. This testimony was given by a disinterested witness and cannot be disregarded. Under it, the ap-

pellant is entitled to damages in the sum of twenty-five cents per share, which would equal $6,250.

The judgment will be reversed, and the cause remanded with direction to the superior court to enter a judgment as herein indicated.

BLAKE, C. J., MILLARD, ROBINSON, and SIMPSON, JJ., concur.