SLATER vs. TRAYNOR MANAGEMENT, INC., 101 Mass. App. Ct. 705

 
 JACOB SLATER & another [Note 1] vs. TRAYNOR MANAGEMENT, INC., & another. [Note 2]

101 Mass. App. Ct. 705
 June 7, 2022 - September 16, 2022

Court Below: Housing Court, Eastern Division
Present: Neyman, Sacks, & D'Angelo, JJ.

 

No. 21-P-1055.

Landlord and Tenant, Security deposit. Practice, Civil, Summary judgment, Discovery, Waiver, Attorney's fees. Tender.

There was no merit to the defendants' claim that the Housing Court judge abused her discretion in denying their request under Mass. R. Civ. P. 56 (f) to defer action on the plaintiffs' summary judgment motion until the judge ruled on the defendants' discovery motion, where the judge effectively allowed the request by ruling on the discovery motion before reaching the merits of the plaintiffs' summary judgment motion, and the defendants neither objected at the time to the manner in which the judge proceeded nor showed any resulting prejudice. [709-710]

In a civil action brought by the plaintiff former tenants of the defendants alleging that the defendants failed timely to return their security deposit as required by G. L. c. 186, § 15B, a Housing Court judge did not err in granting summary judgment to the plaintiffs, where the defendants did not timely tender payment to the plaintiffs within the statutory thirty-day period, either in person or by mail to their known addresses, and the defendants' offer (assuming it was made) to give one of the plaintiffs a check at the defendants' management office if he arranged a time to pick it up, particularly in circumstances where the defendants knew he was out of State, was not a reasonable effort to return the deposit [710-715]; further, the defendants' argument that the judge erred in declining to recognize that its compliance with the statute was prevented by force majeure, in the form of the COVID-19 pandemic, was waived, given that it had not been raised in the defendants' answer, in its summary judgment opposition, or at the summary judgment hearing [715].

A Housing Court judge did not abuse her discretion in awarding attorney's fees to plaintiffs who prevailed on their claim that the defendants failed timely to return their security deposit as required by G. L. c. 186, § 15B [715-716]; further, this court granted the plaintiffs' request for appellate attorney's fees [716].

Civil action commenced in the Eastern Division of the Housing Court Department on December 11, 2020.

 Page 706 

 The case was heard by Irene H. Bagdoian, J., on a motion for summary judgment, and a motion for reconsideration was also heard by her.

 Lenard B. Zide for the defendants.

 John A. Mangones for the plaintiffs.

 SACKS, J. The defendants, a rental property management company and the property owner (collectively, the landlord), appeal from a Housing Court judgment concluding, on the plaintiff tenants' motion for summary judgment, that the landlord had failed timely to return the tenants' security deposit as required by G. L. c. 186, § 15B. The judgment requires the landlord to pay damages equal to three times the deposit plus interest, together with costs and attorney's fees. See G. L. c. 186, § 15B (7). On appeal, the landlord argues that the motion judge (1) abused her discretion in ruling on a discovery matter that the landlord raised in opposing summary judgment, (2) erred in ordering summary judgment where there remained genuine issues of material fact regarding whether the landlord had violated the statute, (3) erred in declining to recognize the landlord's force majeure defense based on the COVID-19 pandemic, and (4) abused her discretion in awarding $17,780 in attorney's fees where the amount of the security deposit, trebled, was only $7,275. We affirm.

 Background. We recount the undisputed facts shown in the summary judgment record, noting also a possible factual dispute that we conclude is not material. The landlord owns and manages a residential apartment unit in Boston. On January 24, 2018, the plaintiffs, Jacob Slater and Nicholas Alessi (collectively, the tenants), acting jointly and severally, executed a lease agreement with the landlord for the apartment for the period from September 1, 2018, to August 31, 2019. The parties later extended the lease for a year, so as to expire on August 31, 2020. As part of the lease, Slater paid the landlord a $2,425 security deposit. [Note 3]

 On August 31, 2020, the lease expired and the tenants vacated the apartment. Immediately after moving out, Slater contacted an officer of the landlord, Wendy Traynor, to ask when the security deposit would be returned. On September 1, 2020, Traynor sent a text message to Slater acknowledging that the landlord was holding the security deposit and further stating, "I have [thirty] days to send it back. I need to talk to [the landlord's facilities 

 Page 707 

manager] and make sure there's no damage. I'm not really worried. Please email forwarding addresses." Slater replied that same day with a text message saying that he would send Traynor his new address by e-mail.

 On September 15, 2020, the facilities manager inspected the apartment and found it to be in the condition required under the lease. The landlord asserts that Traynor then called Slater and told him that, if he wanted his check immediately, he could schedule a time to meet her at the management office, which was closed due to the COVID-19 pandemic. [Note 4] Slater denies ever receiving such a call from Traynor. [Note 5]

 On September 23, 2020, the deposit not having been returned, Slater sent a text message to Traynor, stating that he had sent an e-mail message to her with his and Alessi's addresses "for our security deposit but I never heard anything back so I thought I'd shoot you the info again via text." That same day, Traynor replied, "End of [S]ept." Slater then sent another text message to Traynor, which listed his mailing address in Forest Hills, New York, and Alessi's mailing address in Weymouth. On September 30, 2020, Alessi sent a text message to Traynor asking when he could expect the return of the security deposit. Traynor did not respond to that message.

 On October 28, 2020, nearly two months after the end of the tenancy, Slater retained an attorney, who sent the landlord a demand letter seeking return of the security deposit, trebled, plus $363.75 in interest and $1,250 in attorney's fees, for a total of $8,888.75. On November 4, 2020, the landlord's counsel responded, disputing much of Slater's attorney's legal analysis but indicating that he would return Slater's half of the security deposit and would be willing to return Alessi's half if furnished proper authorization. Counsel also proposed that the parties sign general releases. The following day, the landlord's counsel sent a letter to Slater's attorney enclosing separate checks made out to Slater and Alessi, each for $1,236.87, representing one-half of the security deposit plus some interest, but not treble damages or 

 Page 708 

attorney's fees. [Note 6] After negotiations over additional payments to the tenants failed, the tenants commenced this action in the Housing Court.

 The landlord moved, unsuccessfully, to dismiss the complaint, counterclaimed for abuse of process, and conducted considerable discovery, leading to a motion (discovery motion) to determine whether Slater's objections to certain requests for admissions about his attorney's demand letter were insufficient. [Note 7] The tenants, after conducting minimal discovery, moved for summary judgment. The landlord filed a response pursuant to Mass. R. Civ. P. 56 (f), 365 Mass. 824 (1974), asking that the judge rule on their discovery motion.

 At a hearing, the judge denied the discovery motion and then heard argument on the tenants' motion for summary judgment. She later issued a written decision concluding that, on the undisputed facts, the landlord had violated the security deposit law by failing to return the deposit within thirty days after termination of the tenancy. See G. L. c. 186, § 15B (4), (6) (e). She ruled that the landlord was liable for three times the amount of the deposit plus interest, along with costs and attorney's fees. [Note 8] See G. L. c. 186, § 15B (7).

 The landlord moved for reconsideration, contending that the judge had overlooked the dispute of fact regarding whether Traynor had called Slater and offered to return his security deposit to him at the management office. After a hearing, the judge ruled that the dispute was not material, because the law required the "security deposit to be returned" within thirty days after 

 Page 709 

termination of the tenancy and did not allow a landlord to escape liability by merely "trying" to return a deposit. The judge also allowed the full amount of the tenants' attorney's fees request, $17,780, plus costs. This appeal followed. [Note 9]

 Discussion. 1. Rule 56 (f). The landlord first argues that the judge abused her discretion in denying its request under rule 56 (f) to defer action on the tenants' summary judgment motion until the judge ruled on the landlord's discovery motion. This argument is meritless because, at the summary judgment hearing, the judge in fact proceeded as the landlord had requested.

 The landlord's rule 56 (f) request, made as part of its summary judgment opposition, was notably vague. The opposition recited that (1) there were genuine issues of material fact (without specifying what those issues were); (2) the landlord's discovery motion was outstanding; and (3) the judge could, under rule 56 (f), defer ruling on the summary judgment motion, because the landlord had shown a need for additional time to marshal facts essential to its opposition (without specifying what those facts were). The opposition "request[ed] relief under . . . [r]ule 56 (f)," without specifying how much time or what additional discovery the landlord needed. The opposition also asked the judge to deny the summary judgment motion, but it specified no basis for doing so.

 At the motion hearing, the judge first heard argument on the landlord's discovery motion. She concluded that Slater's objections were sufficient and that allowing the motion would not produce any relevant or material evidence; she therefore denied it from the bench. The judge then heard argument on the tenants' summary judgment motion and took it under advisement. At no time during the argument did the landlord object that, given the denial of its discovery motion, it needed additional time to prepare a more substantive summary judgment opposition than it had already filed. [Note 10] Indeed, the landlord was able to make the same argument about counsel's demand letter -- that the letter 

 Page 710 

was sent before counsel represented Alessi -- that it could have made had its discovery motion been allowed.

 In these circumstances, we see no abuse of discretion in the judge's action on the landlord's rule 56 (f) request. She effectively allowed it, by ruling on the landlord's discovery motion before reaching the merits of the tenants' summary judgment motion. [Note 11] The landlord neither objected at the time to the manner in which the judge proceeded nor has shown any resulting prejudice.

 2. Landlord's attempt to "return" deposit. The landlord next argues that summary judgment was erroneous because, in light of Traynor's claimed telephone call to Slater offering to meet at the management office, there remained a genuine issue of material fact regarding whether the landlord had violated the requirement to return the deposit within thirty days of the end of the tenancy. "We review a grant of summary judgment de novo, construing all facts in favor of the nonmoving party." Miller v. Cotter, 448 Mass. 671, 676 (2007).

 Under G. L. c. 186, § 15B (4), "[t]he lessor shall, within thirty days after . . . the end of the tenancy as specified in a valid written lease agreement, return to the tenant the security deposit or any balance thereof," [Note 12] subject to certain permissible deductions not applicable here. Here, the landlord asserts that its claimed attempt (through Traynor's telephone call) to return the deposit to Slater, if proved at trial, would insulate it from liability under the statute. The judge ruled that any dispute of fact regarding the telephone call was not material, because nothing in the statute protects a landlord from liability where that landlord has merely attempted, unsuccessfully, timely to return the deposit. In these circumstances, we agree with the judge.

 The law is clear that where, as here, there are no permissible deductions from the security deposit, the entire deposit plus interest must be returned within thirty days after the end of the tenancy, and the failure to do so entitles the tenant to treble 

 Page 711 

damages and attorney's fees. In Taylor v. Beaudry, 82 Mass. App. Ct. 105 (2012) (Taylor II) -- recounting our earlier decision in the same case, Taylor v. Beaudry, 75 Mass. App. Ct. 411 (2009) (Taylor I) -- we said: "the cause of action under G. L. c. 186, § 15B(7), for failure to return a security deposit to a tenant as required by § 15B(6)(e) arises when the landlord 'fails to return to the tenant the security deposit . . . within thirty days after termination of the tenancy.'" Taylor II, supra at 107, quoting Taylor I, supra at 415-416, quoting § 15B (6) (e). We added "that a subsequent, late payment of the security deposit by the landlord in response to a demand by the tenant does not entitle the landlord to dismissal of the tenant's complaint." Taylor II, supra. And we reiterated: "by its 'unambiguous' language the statute does not require landlords to return security deposits only when threatened with litigation. . . . Rather, [in Taylor I] we said that the statute requires landlords to follow its 'clear' terms and return security deposits within thirty days of the termination of tenancy or risk suits like this one for treble damages." [Note 13] Taylor II, supra at 111, quoting Taylor I, supra at 416. See Phillips v. Equity Residential Mgt., L.L.C., 478 Mass. 251, 259 (2017).

 In Taylor II, because "both the mailing and the receipt of the security deposit took place beyond the statutory thirty-day deadline," we declined to reach the question whether "the statute requires receipt, not simply mailing, of the security deposit within thirty days." [Note 14] Taylor II, 82 Mass. App. Ct. at 109-110. See Taylor I, 75 Mass. App. Ct. at 417 n.13. Here, we consider a related question: whether a landlord's assertedly reasonable effort to return a security deposit within thirty days, followed by a 

 Page 712 

tenant's late receipt of the deposit due to circumstances beyond the landlord's control, would constitute a "return" of the deposit under the statute or otherwise protect the landlord from any part of the liability imposed by the statute. We adopt an approach similar to Taylor II, concluding that we need not resolve this question because, even if the answer is "yes," the landlord's efforts here were unreasonable as a matter of law. In particular, the landlord unreasonably failed to return the deposit to the tenants by mail, so the tenants' late receipt of the deposit was not due to circumstances beyond the landlord's control. Thus, the landlord is liable for violating the statute.

 The undisputed facts are that the landlord (1) knew by September 15 that the tenants were entitled to return of the full amount of the deposit plus interest by the end of September; (2) believed that it was feasible to return the deposit by mail and that the tenants expected return by that means; and (3) drafted checks to return the deposit on September 15, but did not mail the checks or otherwise return the deposit to the tenants by September 30. [Note 15] Nowhere in the summary judgment record is there evidence of why the landlord did not timely return the deposits by mail, as the tenants requested. [Note 16]

 Even if Traynor called Slater on September 15 and invited him to arrange to pick up a check at the management office (which Slater disputed), she knew from his text message on September 23 that he claimed not to have heard from her despite previously sending his and Alessi's mailing addresses, and he sent her the addresses again on that date so that she could return the deposit. [Note 17] Slater's address was in New York, and Alessi's was in 

 Page 713 

Weymouth. Thus, Traynor was on notice that for Slater to come from New York (or Alessi from Weymouth) to the management office in Boston would, at a minimum, be quite inconvenient for them. [Note 18]

 To evaluate the reasonableness of the landlord's efforts, we turn to the concept of "tender." Our decisions have often assumed that the "return" of a security deposit necessarily includes, although is not limited to, the landlord making a tender of the money to the tenant. Most recently, in Henry v. Bozzuto Mgt. Co., 98 Mass. App. Ct. 690 (2020), we recounted how a landlord had "tendered a check made out to the [tenants] for the full amount," but the tenants "rejected . . . the tender." Id. at 693. See id. at 697 ("making a tender . . . requires production of the entire amount owed"). See also Taylor I, 75 Mass. App. Ct. at 415 n.9; Young v. Patukonis, 24 Mass. App. Ct. 907, 909 (1987); Castenholz v. Caira, 21 Mass. App. Ct. 758, 764 (1986); Goes v. Feldman, 8 Mass. App. Ct. 84, 92 (1979).

 As a general matter,

"[t]o constitute a valid tender the money must be actually produced and offered to the person who is entitled to receive it. . . . There must be an actual production of the money unless such production be dispensed with by the declaration of the party to whom it is due that he will not receive it, or by some equivalent declaration or act. A mere offer to pay or a statement that the party has the money and is ready and willing to pay, without actual production of it, is not sufficient to constitute a valid tender."

Metropolitan Credit Union v. Matthes, 46 Mass. App. Ct. 326, 333 (1999), quoting Mondello v. Hanover Trust Co., 252 Mass. 563, 567 (1925). The court in Metropolitan Credit Union held that a mortgagor's telephoned offer to pay a mortgagee more than what was owed was insufficient to cure the mortgagor's default. 

 Page 714 

 Metropolitan Credit Union, supra at 332-333. The court relied on an earlier case in which a letter from a buyer's counsel informing a seller of land that the buyer was prepared to pay the balance due "did not constitute legal tender of payment." Id. at 333, citing Ward v. Doucette, 1 Mass. App. Ct. 842 (1973).

 Under these principles, the landlord here did not make a valid tender of the security deposit within the statutory thirty-day period. Moreover, although there appears to be little case law on the issue in the Commonwealth, authority elsewhere -- old, but never overruled -- indicates that "[t]o constitute a good tender, the law requires payment at the proper place," and "[a]t common law with respect to the payment of money . . . where the time, but no place, of payment is specified, and no place of payment is fixed by law, the rule is that the tenderer must seek the tenderee and make a tender to them wherever they can be found" (footnote omitted). [Note 19] 86 C.J.S. Tender § 16 (2017). One view is that "[p]ayment offered at a place other than the creditor's place of business is not tender, unless the creditor agrees otherwise" (footnotes omitted). [Note 20] Id. Another view is that "where no place of payment [is] mentioned in the instrument, a tender should [be] made at the residence of the creditor." [Note 21] Gerard v. Bank of N.Y. & Trust Co., 240 A.D. 531, 536 (N.Y.), rev'd on other grounds, 265 N.Y. 336 (1934). "The tenderer, however, is not bound to go out of the state to find the tenderee" (footnote omitted). [Note 22] 86 C.J.S. Tender § 16.

 We need not decide which of these rules applies in the Commonwealth; we do not attempt a comprehensive statement of when and how a landlord must tender the return of a security deposit, where both the statute and the lease are silent on the issue. See note 14, supra. It is enough to say that the landlord here did not timely tender payment to Alessi at his known address in the Commonwealth, either in person or by mail, and did not 

 Page 715 

timely tender payment to Slater by mail at his known address in New York. The offer (assuming it was made) to give Slater a check at the landlord's management office if he would arrange a time to pick it up, particularly in circumstances where the landlord knew Slater was out of State, was not a reasonable effort to return the deposit. [Note 23]

 3. Force majeure. The landlord claims that the judge erred in declining to recognize that its compliance with the statute was prevented by force majeure, in the form of the COVID-19 pandemic. This argument is waived; the landlord never raised such a defense in its answer, or in its summary judgment opposition, or at the summary judgment hearing. Moreover, the concept of force majeure is generally applied in contract disputes, [Note 24] and the landlord cites no authority for applying it to protect a party from a statutory liability such as the one at issue here. [Note 25] Finally, the landlord's summary judgment opposition cited no evidence suggesting that the pandemic prevented it from timely returning the deposit by mailing a check or checks to the tenants.

 4. Attorney's fees. Finally, the landlord argues that the judge abused her discretion in awarding $17,780 in attorney's fees where the amount of the security deposit, trebled, was only $7,275. [Note 26] The landlord relies generally on the dissenting opinion in Taylor II, which argued that the majority had applied the security deposit law too strictly. See Taylor II, 82 Mass. App. Ct. at 113-122 (Brown, J., dissenting). But the landlord asserts no 

 Page 716 

specific error in the Taylor II majority's interpretation of the statute and no specific abuse of discretion in the judge's application of Taylor II here in determining the landlord's liability for fees. [Note 27]

 After determining that the tenant's counsel's requested rate of $300 per hour was reasonable, the judge wrote:

"[The tenants' counsel] claims that he devoted 59.40 hours of time to this matter, which -- on its face -- seems extraordinarily high for a security deposit case. Nonetheless, after examining the time records of the [tenants'] attorney and noting the extraordinary amount of work which he was obliged to do on account of the demands of the [landlord's] defense strategy, the [c]ourt finds that the time spent was reasonable. The [tenant's] counsel has proven that he is entitled to $17,780[] in legal fees to date."

The landlord does not point to, and we do not see, any abuse of discretion in this conclusion.

 5. Appellate attorney's fees. The tenants, citing the attorney's fees provision of the security deposit statute, G. L. c. 186, § 15B (7), have requested an award of their appellate attorney's fees and costs. We allow that request. See Mellor v. Berman, 390 Mass. 275, 284 (1983). See also Yorke Mgt. v. Castro, 406 Mass. 17, 19 (1989) (language in G. L. c. 186 and G. L. c. 93A making "provisions for a 'reasonable attorney's fee' would ring hollow if it did not necessarily include a fee for the appeal"). The tenants are invited to file a verified and itemized application for such fees and costs within fourteen days of the date of this decision, and the landlord will have fourteen days thereafter in which to file any opposition to the amounts requested. See Fabre v. Walton, 441 Mass. 9, 10-11 (2004).

 Judgment affirmed.

FOOTNOTES
[Note 1] Nicholas Alessi. 

[Note 2] Westland Realty, LLC. 

[Note 3] The money was paid by Slater's mother, and Alessi subsequently reimbursed Slater one-half of that amount. 

[Note 4] The record does not indicate where the office was physically located, but the lease shows the landlord's mailing address as a post office box in Boston. 

[Note 5] Records from Slater's cell phone service provider showed that he did not receive any telephone calls in September of 2020 from any of the telephone numbers used by Traynor. We need not decide whether (as the tenants argue) those records sufficed to eliminate any genuine issue of fact, because we conclude infra that any such dispute was not material. 

[Note 6] That same day, Alessi, who previously had an informal agreement that Slater would pursue return of the security deposit on behalf of both of them, signed and returned a contract to be represented by Slater's attorney. 

[Note 7] The five requests at issue asked Slater to admit that the demand letter sent by his attorney on October 28, 2020, made certain statements, and omitted certain other statements, regarding whether the attorney also represented Alessi. Slater had separately admitted that the demand letter was sent, and that the landlord's copy of it was genuine, but he objected to the five requests on the ground that the letter spoke for itself. There is authority for the proposition that "if the request for admission quotes a document[] and asks the other party to admit that the document contains the material quoted, it should be admitted if the quotation is accurate and denied if it is not," and that a response saying that "the document speaks for itself" is "not a legitimate objection" but instead is "a waste of time." Miller v. Holzmann, 240 F.R.D. 1, 4 (D.D.C. 2006). We need not resolve that issue here. 

[Note 8] The judge also ordered summary judgment dismissing the landlord's counterclaim. The landlord does not challenge that aspect of the judgment on appeal. 

[Note 9] The landlord filed a notice of appeal on the same day that it received the order denying its motion for reconsideration. The order also included an order for the entry of judgment, but the judgment did not enter until the next day. Although the notice of appeal was technically premature, no party has been prejudiced, and we exercise our discretion to reach the merits. See Swampscott Educ. Ass'n v. Swampscott, 391 Mass. 864, 865-866 (1984); Creatini v. McHugh, 99 Mass. App. Ct. 126, 128 (2021). 

[Note 10] Even had the landlord made such a belated request, the judge would have been under no obligation to allow it. 

[Note 11] On appeal, the landlord does not challenge the denial of its discovery motion, and it concedes that a demand letter is not a prerequisite to recovery here. See note 13, infra. 

[Note 12] Under G. L. c. 186, § 15B (6) (e), a landlord who fails timely to return the security deposit plus interest forfeits the right to retain the deposit. A landlord's noncompliance with that provision entitles a tenant to "damages in an amount equal to three times the amount of such security deposit or balance thereof to which the tenant is entitled plus interest at the rate of five per cent from the date when such payment became due, together with court costs and reasonable attorney's fees." G. L. c. 186 § 15B (7). 

[Note 13] The landlord asserted at the summary judgment hearing that there existed a genuine issue of fact regarding whether Alessi had demanded the return of the deposit before it was actually returned. At oral argument before us, however, the landlord conceded -- properly, given the Taylor decisions -- that if a security deposit has not been timely returned under G. L. c. 186, § 15B (4) and (6) (e), then § 15B (7) entitles a tenant to treble damages and attorney's fees even without making a demand. In this respect, § 15B (6) (e) differs from § 15B (6) (a), as interpreted in Castenholz v. Caira, 21 Mass. App. Ct. 758, 762-763 (1986). See Karaa v. Kuk Yim, 86 Mass. App. Ct. 714, 723 (2014); Taylor I, 75 Mass. App. Ct. at 414-416. 

[Note 14] We further observed that "[t]he meaning of the word 'return' in this statute is an important question with broad implications for landlord-tenant law. . . . [W]e have before us only a single pro se brief in this case, and the statutory question does not appear to be a simple one in light of possible difficulties involved in construction of the language of the statute, and of its structure and purpose" (footnotes omitted). Taylor II, 82 Mass. App. Ct. at 110. 

[Note 15] As we said in Taylor II in discussing the possible ambiguity of the statutory word "return," "when a check for repayment of borrowed money is placed in the mail, one might say that the money had been 'returned.'" Taylor II, 82 Mass. App. Ct. at 110 n.3. At the summary judgment hearing, the landlord asserted that mailing the checks would have been "acceptable" under the statute. 

[Note 16] At the summary judgment hearing, the landlord's counsel represented that Traynor's father was terminally ill in September 2020 and that she had been with him at a hospital or while he was in hospice care. After the judge ordered summary judgment, the landlord, in opposing the assessment of attorney's fees, stated that Traynor's father passed away on November 29, 2020. Although these circumstances were unfortunate for Traynor's family, the landlord did not assert that they prevented Traynor from communicating with the facilities manager, drafting checks, responding to Slater's text messages, and otherwise conducting business, as the record shows she did. 

[Note 17] We are unpersuaded by the landlord's suggestion that there was a dispute of material fact over whether Slater was entitled to receive the full amount of the deposit, including the half to which Alessi was ultimately entitled. There is no dispute that the landlord failed to timely return any part of the deposit to either of them, and they both filed this suit. 

[Note 18] Other than showing that the management office was closed due to the COVID-19 pandemic in September -- requiring that any meeting there be arranged in advance -- the record does not indicate precisely how the pandemic would have affected an attempt to meet there. There is certainly no evidence or reason to believe that the pandemic made such a meeting more feasible for either tenant. 

[Note 19] See Berley & Kyzer v. Columbia, Newberry & Laurens R.R., 82 S.C. 232, 234 (1909) (collecting other authorities). See also Weyand v. Randall, 131 A.D. 167, 169 (N.Y. 1909) ("The general rule that where no place of payment is specified the debtor must seek the creditor, is unquestioned"). 

[Note 20] See Anderson v. Citizens Bank, 294 S.C. 387, 396 (Ct. App. 1987), overruled on other grounds, Ward v. Dick Dyer & Assocs., Inc., 304 S.C. 152 (1991). 

[Note 21] As of 1919, the Revised Code of Practice of Louisiana provided that, if an agreement did not specify the place of payment of money due, tender must be made to the creditor, at the creditor's residence, or at the place of execution of the agreement. See Ruffo v. Marcotte, 3 Pelt. 415, 419 (La. Ct. App. 1919). 

[Note 22] See Kingston v. Anderson, 3 Wash. 2d 21, 23 (1940). 

[Note 23] As the tenants point out, a contrary rule would be unfair to tenants who, after the termination of the tenancy, move out of State (as Slater did) or out of the country. Relatedly, an offer to refund the deposit at the formerly leased premises is not necessarily reasonable, because the tenant would have moved out of those premises up to thirty days earlier. 

[Note 24] See, e.g., NextEra Energy Resources, LLC v. Department of Pub. Utils., 485 Mass. 595, 599, 601, 606 (2020); Baetjer v. New England Alcohol Co., 319 Mass. 592, 595-598 (1946); Nantasket Beachfront Condominiums, LLC v. Hull Redev. Auth., 87 Mass. App. Ct. 455, 460 (2015). 

[Note 25] Similarly, the doctrines of impossibility and frustration of purpose, also mentioned in the landlord's appellate brief, are generally limited to the contractual context. See, e.g., Chase Precast Corp. v. John J. Paonessa Co., 409 Mass. 371, 373-374 (1991). Those doctrines, which are explained in Chase Precast Corp., have no application here. 

[Note 26] We will review an award of attorney's fees under the statute for abuse of discretion. See Karaa, 86 Mass. App. Ct. at 724. Cf. McGrath v. Mishara, 386 Mass. 74, 87 (1982) (same under G. L. c. 93A); Darmetko v. Boston Hous. Auth., 378 Mass. 758, 764765 (1979) (same under G. L. c. 186, § 14); Smith v. Bell Atl., 63 Mass. App. Ct. 702, 725 (2005) (same under G. L. c. 151B). 

[Note 27] The majority and the dissent in Taylor II mentioned attorney's fees only in passing. See Taylor II, 82 Mass. App. Ct. at 107, 111; id. at 115 n.4, 116, 121 (Brown, J., dissenting). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.