J.F. White Contracting Company entered into a public construction contract to replace, remove, or clean culverts running beneath active commercial rail lines in preparation for South Coast Rail commuter train traffic. The contract with the Massachusetts Department of Transportation (“MassDOT”) had an amended maximum obligation amount of $20.3 million. After essentially completing its work, J.F. White sought an additional $11.5 million for extra costs it claims to have incurred due to unanticipated site conditions and allegedly defective contract documents. It then brought suit asserting various claims for breach of contract or, in the alternative, for recovery on a quantum meruit (or unjust enrichment) theory.
The Court will allow MassDOT’s motion for summary judgment on all claims. MassDOT is entitled to judgment in its favor on the differing site conditions claims as a matter of law because the record establishes that J.F. White failed to provide timely notice, as required by the plain language of the written contract, that it was requesting an equitable adjustment as to any of the culverts. MassDOT is similarly entitled to judgment in its favor on the defective contract documents claims because it is undisputed that J.F. White failed to promptly report alleged errors in the contract specifications and did not seek a contract change order before doing the work.
“Summary judgment is appropriate” in this case because “no material facts are in dispute and the moving party,” MassDOT, “is entitled to judgment as a matter of law.” Tody’s Service, Inc. v. Libert Mut. Ins. Co., 496 Mass. 197, 199 (2025). “The purpose of summary judgment is to decide cases where there are no issues of material fact,” like this one, and to do so “without the needless expense and delay of a trial followed by a directed verdict.” Correllas v. Viveiros, 410 Mass. 314, 316 (1991).
                                                            -1-
 
1. Differing Site Conditions Claims. J.F. White claims that, under G.L. c. 30, § 39N, and related contract provisions, it is entitled to an equitable adjustment in the contract price to cover extra costs incurred because conditions at culvert work sites differed substantially or materially from those shown on MassDOT’s plans or in other contract documents.
But the record establishes that J.F. White cannot prove that it provided timely advance notice that it was seeking such an equitable adjustment, which is a contractual condition precedent to obtaining such extra payments.
Since J.F. White cannot prove an essential element of these claims, MassDOT is entitled to summary judgment on the breach of contract claim in Count Three of the complaint, the claim for breach of the implied covenant of good faith and fair dealing in Count Four, and the quantum meruit claim in Count Five. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 715 (1991) (“If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law.”) (quoting Celotex Corp. v. Catret, 477 U.S. 317, 328 (1986) [White, J., concurring]).
Whether J.F. White would have been entitled to recoup extra costs if it had provided timely written requests for equitable adjustments is thus irrelevant. “A nonmoving party’s failure to establish an essential element of her claim ‘renders all other facts immaterial’ and mandates summary judgment in favor of the moving party.” Roman v. Trustees of Tufts College, 461 Mass. 707, 711 (2012), quoting Kourouvacilis, supra, at 711.
1.1. No Contractual Right to an Equitable Adjustment. J.F. White failed to follow the required procedures for an equitable adjustment in the contract price due to differing site conditions. It is therefore not entitled to obtain any extra compensation on the ground that it encountered differing site conditions. See Glynn v. City of Gloucester, 21 Mass. App. Ct. 390, 396 (1986) (“Glynn II”); D. Federico Co., Inc. v. Commonwealth, 11 Mass. App. Ct. 248, 252–253 (1981); Skopek Bros., Inc. v. Webster Housing Auth.,  11 Mass. App. Ct. 947 (1981) (rescript). As the Appeals Court has explained:
On a public construction contract, if actions or requirements of the public agency necessitate changes in the work as it progresses, thereby causing the contractor to perform extra work or incur added expense, ... the contractor must follow the procedures spelled out in the contract
 
                                                            -2-
 
... to adjust the price before unilaterally accruing expenses to be pursued later on breach of contract or quantum meruit theories.
Glynn II, supra, at 394–395, quoting Glynn v. City of Gloucester, 9 Mass. App. Ct. 454, 460 (1980).
Since J.F. White failed to follow the procedures mandated by contract and by § 39N, any additional costs due to differing site conditions “were incurred unilaterally at its own expense” and J.F. White has no right to recover them from MassDOT. See Glynn II, supra, at 398. MassDOT is therefore entitled to summary judgment on Count Three.
1.1.1. Proper Notice Was a Condition Precedent. As required by G.L. c. 30, § 39N, the parties’ contract provides that if J.F. White discovered “during the progress of the work” that “actual subsurface or latent physical conditions encountered at the site differ substantially or material from those shown on the plans or indicated in the contract documents,” then it could “request an equitable adjustment in the contract price.” See General Conditions § 8.5.1.
Section 39N provides that the contract awarding authority “may adopt reasonable rules or regulations … concerning the filing, investigation, and settlement” of claims for an equitable adjustment in price due to differing site conditions. MassDOT did so. The contract required J.F. White to provide notice that it was seeking such an equitable adjustment due to differing site conditions “promptly, and before such conditions are disturbed.” Id. § 8.5.3.
J.F. White was required to make such a request “in writing” and do so “as soon as possible after such conditions are discovered.” Id. § 8.5.1. That would provide MassDOT with the opportunity to “make an investigation of such physical conditions” and make an appropriate equitable adjustment in the contract price if the actual conditions differed substantially “and are of such a nature as to cause an increase or decrease in the cost of performance.
Providing notice that meets these conditions was a contractual condition precedent to J.F. White obtaining any equitable adjustment. The contract states that claims for additional compensation due to differing site conditions “shall not be allowed unless [J.F. White] has first given the notice required” by contract, as discussed above. Id. § 8.5.5.
If contracting parties intend “that the giving of notice was a condition precedent” to obtaining some additional payment, they may express that intent by saying that payment may be obtained only “on the condition that,”
 
                                                            -3-
 
“provided that,” or “if” the required notice is given, or by using similarly explicit language to express that intent. Massachusetts Port Auth. v. Johnson Controls, Inc., 54 Mass. App. Ct. 541, 544 (2002); see also Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers, 411 Mass. 39, 46 (1991) (“ ‘Emphatic words’ are generally considered necessary to create a condition precedent that will limit or forfeit rights under an agreement.”).
The contract language stating that a claim for an equitable adjustment “shall not be allowed unless” notice is given as required by the contract created a condition precedent to payment. See Columbia Pontiac Co., Inc. v. Board of Assessors of Boston, 395 Mass. 1010 (1985) (rescript) (statutory provision stating that local property tax “shall not be abated unless the full amount of said tax due has been paid without the incurring of any interest charges,” G.L. c. 59, § 64, makes timely payment in full “a condition precedent” to the Appellate Tax Board exercising jurisdiction over an abatement appeal); Vasys v. Metropolitan Dist. Comm’n, 387 Mass. 51, 52 (1982) (provision in Mass. Tort Claims Act stating that action “shall not be instituted … unless” claim is first timely presented in writing, G.L. c. 258, § 4, made “presentment … a condition precedent to bringing suit”).
In sum, if J.F. White wished to seeking any equitable adjustments increasing the contract price due to differing conditions at a particular culvert site, it was required to: (1) notify MassDOT in writing that it was “seeking an equitable adjustment;” (2) explain with reasonable specificity how the actual conditions that J.F. White at each site differed from those shown on the plans or indicated in the contract documents; (3) do so before disturbing the actual site conditions; and (4) “cease[] operations” so that MassDOT could examine the actual site conditions and determine whether an equitable adjustment in price was warranted before J.F. White performed the work in question. See Sutton Corp. v. Metropolitan Dist. Comm’n, 423 Mass. 200, 205 (1996); General Conditions §§ 8.5.1 to 8.5.6.
1.1.2. No Timely Request for Equitable Adjustments. The culverts that were the subject of J.F. White’s contract with MassDOT are structures that support train tracks while allowing water to flow underneath. J.F. White contracted to remove and replace 46 culverts, remove one culvert without replacing it, and clean out 16 other culverts. It is undisputed that each of the 63 pre-existing culverts was in a unique location with unique topography, surrounding vegetation, and soil mix.
 
                                                            -4-
 
J.F. White contends that at many of the culvert sites it encountered soil that was wetter and siltier than it expected based on its review of the contract documents. It claims that, as a result, J.F. White incurred unexpected costs because it had to excavate beyond the limits shown on the contract documents, could not reuse the soil as backfill in certain areas requiring gravel borrow (a mix of sandy gravel and rock), and could not dry all excavated material to specified moisture levels required for reuse in other areas.
In Count Three, J.F. White claims that MassDOT breached the construction contract by not approving a substantial equitable adjustment increasing the contract price to compensate J.F. White for the additional costs that it claims in incurred because of these differing site conditions.
This claim fails as a matter of law because J.F. White failed to provide the written notice that is a condition precedent to obtaining such an equitable adjustment.
1.1.2.1. The May 2019 Letter. The first written notice of differing site conditions was ineffective because J.F. White completed the work in question before seeking an equitable adjustment.
On May 24, 2019, J.F. White submitted a letter asserting that site conditions differed from the data reported in the Geotechnical Report because excavated material contained higher levels of silt and as a result its “water content is too high to be acceptable as backfill.”
In this letter, J.F. White identified one culvert where it had already excavated material that had too high a water content to be used as backfill. J.F. White wrote that it “anticipates” that differing site conditions “may only exist at isolated work zones within the Project,” but acknowledged that “further investigation must be performed to confirm this.” It did not identify any other specific sites with differing site conditions.
It is undisputed that J.F. White had already completed all work on the one culvert identified in the May 2019 letter by the time it submitted this written notice. Since J.F. White failed to submit this request for an equitable adjustment before the allegedly differing site conditions were disturbed, as required by General Conditions § 8.5.3, it was not entitled to any price increase for this site.
To the extent that J.F. White contends that its May 2019 letter put MassDOT on notice that it would be entitled to unspecified equitable adjustments for culvert
 
                                                            -5-
 
work at other sites that J.F. White had not yet inspected, that assertion is unavailing.
J.F. White acknowledges in its written opposition that, at the time of this letter, it “could only provide limited information about the differing site conditions at the Project because it had only performed two excavations.” But J.F. White argues that, because the letter also “forecasted the possibility of encountering additional similar conditions in the remainder of the Project” (emphasis added), it thereby fulfilled the contractual “requirement to promptly notify MassDOT in writing of the existence of differing site conditions on the Project and request an equitable adjustment to the contract price.”
Not so.
By statue and contract, J.F. White was not entitled to any equitable adjustment without giving proper notice that “actual subsurface or latent physical conditions encountered at the site” differ in substantial or materials ways from the contract documents. See G.L. c. 30, § 39N (emphasis added); General Conditions § 8.5.1 (emphasis added). A mere prediction that J.F. White may encounter differing conditions at other sites could not support a legally sufficient written notice that J.F. White was requesting equitable adjustments for those sites.
As noted above, J.F. White admits that the soil mix and other conditions at every culvert site were unique. J.F. White concedes it is undisputed, just as its Rule 30(b)(6) witness acknowledged, that J.F. White was not aware of differing site conditions related to the soil until it started excavating at each site.
The May 2019 letter did not, and could not have, requested an equitable adjustment based on “actual conditions” at sites not specified in the letter before J.F. White excavated the site and learned that the unique conditions at a particular site differed from what was described in the contract documents.
1.1.2.2. The May 2020 Letter. After completing all work to replace or clean all of the culverts covered by the contract, J.F. White submitted a written Request for Equitable Adjustment on May 4, 2020, in which it asked MassDOT to pay an additional $11,494,200 as compensation for extra costs allegedly incurred due to differing conditions at some or all of the culvert sites.
This letter came far too late to satisfy the contractual notice requirements. By waiting until May 2020 to put MassDOT on notice that it was seeking a huge equitable adjustment, J.F. White failed to provide notice that it was seeking a
 
                                                            -6-
 
price increase due to differing site conditions “as soon as possible after such conditions are discovered,” and failed to do so “promptly, and before such conditions are disturbed,” as required by General Conditions §§ 8.5.3 and 8.5.5.
As a result, and as noted above, any additional costs due to differing site conditions “were incurred” by J.F. White “unilaterally at its own expense” and J.F. White has no right to recover them from MassDOT. See Glynn II, 21 Mass. App. Ct. at 398.
1.1.2.3. The Work Plans, RFIs, and Other Communications. J.F. White argues that its failure to submit requests for equitable adjustments in the manner required by contract does not matter because it kept MassDOT fully informed about the scope of its excavation work and what it learned about soil composition, MassDOT knew that J.F. White had a potential claim for an equitable adjustment based on differing site conditions, and MassDOT could have but failed to ask what the differing conditions had cost J.F. White.
Once again, not so.
J.F. White notes that each week it submitted detailed work plans that MassDOT routinely approved, “even when the plans proposed limits of excavation that exceeded the Contract’s limits of excavation.” It points to Requests for Information (“RFIs”) that “detailed concerns over soil composition and compactability, and their impact on use as backfill.” And J.F. White says that it “met and corresponded regularly” with MassDOT and its Project consultants “regarding soil conditions.”
None of that evidence supports J.F. White’s claim for breach of contract because none of those communications stated in writing, before work was done on any of the culverts, that J.F. White was seeking an equitable adjustment to cover additional costs that it would have to incur due to differing site conditions. MassDOT correctly notes that “[n]one of these submissions by J.F. White … were claims that described cost increases due to different site conditions or sough an equitable adjustment in the Contract price.” [1]
 
--------------------------------------------
 
[1] The Requests for Information would not have sufficed even if they expressly noted that J.F. White would be seeking an equitable adjustment, which they did not. The contract makes clear that ROIs could be used only to seek “interpretation of the Contract Documents,” and “shall not be used” to request approval to incur additional costs due to claimed “nonconforming conditions.” See Contract § 01300 (“Submittals”), ¶ 1.5.A (at JA 29).
 
                                                            -7-
 
Under the contract, if J.F. White believed that it was encountering soil or other site conditions that differed from the contract documents and that as a result it was entitled to a price increase, the burden was on J.F. White to send express and timely written requests for such equitable adjustments.
J.F. White now tries to shift that burden, arguing that MassDOT should have realized that J.F. White would be seeking an equitable adjustment after completing its work, and that if MassDOT wanted to avoid any surprise then “MassDOT could simply have inquired as to what the work as authorized was costing.” But that is not at all what the parties’ contract contemplated or required.
MassDOT was entitled to assume that J.F. White was performing its work pursuant to the terms of their contract, under which J.F. White agreed to a maximum total price and also agreed to provide timely notice of any unforeseen condition that could increase the total cost. J.F. White was required to do the things described in its regular work plans within budget, and that any request for a price increase to cover additional costs resulting from differing site conditions “shall not be allowed unless [J.F. White] has first given the notice required” by contract, as discussed above. See General Conditions § 8.5.5. MassDOT had no obligation under the contract to scrutinize every work plan submitted by and other communication with J.F. White and decide whether, perhaps, J.F. White could have submitted an express request for an equitable adjustment based on differing site conditions.
1.2. No Right to Payment under the Earthworks Specifications. J.F. White argues that, even if it is not entitled to recoup all of its claimed extra costs, “at a minimum” it has the contractual right to recover costs incurred to excavate beyond the limits identified in the contract documents or to remove unsuitable soil materials. J.F. White contends that it may do so under the contract’s Earthworks Specifications, without having to show that it complied with other contractual notice provision.
This argument is also without merit.
J.F. White relies on two parts of the contractual Earthworks Specifications. One section provides that costs associated with “authorized additional excavation and replacement material will be paid for according to Contract provisions for unit prices;” in this context “authorized additional excavation” means excavation that is “directed by [the] Engineer” to go beyond contract
 
                                                            -8-
 
dimensions. See Section 02300, ¶ 1.3.E.1 (at JA 33). The other section, titled “Unsuitable Excavation,” provides that J.F. White may recover costs incurred to remove unsuitable soil and other materials. See Id., ¶ 4.1.A.2 (at JA 46).
Neither of these provisions in the Earthworks Specifications excused J.F. White from the notice and approval requirements set forth in the contract’s General Conditions. To the contrary, the contract makes clear that the requirements of the General Conditions trump all of the Technical Specifications if there is any conflict or inconsistency. See General Conditions § 3.6.1.
This means that, to the extent J.F. White contends that Authorized Additional Excavation or Unsuitable Excavation became necessary because it turned out that actual site conditions differed from those described in the contract documents, it was required to comply with the equitable adjustment notice procedures described in detail above. Which it failed to do.
And, to the extent J.F. White contends that Authorized Additional Excavation or Unsuitable Excavation became necessary for some other reason, it was required to follow the contractual change order process to obtain additional compensation. The contract provides that “[t]he Contract Amount may only be changed by written Change Order,” and that any claim to increase the Contract Amount “shall not be allowed unless the notice requirements of this Contract are met.” See General Conditions §§ 9.1.1 and 9.1.2. It further provides that— other than for equitable adjustments covered by G.L. c. 30, § 39N—any increase in the total Contract Amount “may be made … only by Change Order which must be requested and approved in advance of performing any Work,” and (in all caps) that “NO ADDITIONAL WORK SHALL BE UNDERTAKEN [and] NO ADDITIONAL COSTS OR EXTENSIONS OF TIME MAY BE CONSIDERED OR OCCUR WITHOUT OWNER’S EXPRESS WRITTEN AUTHORIATION, IN ADVANCE.” See Id., §§ 8.3.1 and 8.3.3.
Since it is undisputed that J.F. White did not seek or obtain change orders authorizing extra work in advance, and for the reasons discussed above J.F. White also never provided the required advance contractual notice that it was seeking an equitable adjustment based on differing site conditions, J.F. White is not entitled to recover any amounts pursuant to the Earthworks Specifications that it relies upon.
1.3. No Contract Amendment. During oral argument, J.F. White asserted for the first time that MassDOT representatives orally agreed to modify or amend
 
                                                            -9-
 
the contract provisions that govern the requirement of advance written notice that J.F. White would be seeking an equitable adjustment before undertaking work made necessary by differing site conditions. J.F. White now contends that, during a June 6, 2019, meeting to discuss its concerns about the possibility that J.F. White may encounter differing site conditions, MassDOT agreed to modify the contract to eliminate the equitable adjustment notice requirements and permit J.F. White instead to submit work plans and soil data for MassDOT to review and approve.
This argument fails for two, independent reasons.
First, J.F. White waived this argument by failing to raise and develop it in the written opposition. In its memorandum, J.F. White argued that it had complied with all contractual notice requirements for reporting differing site conditions and seeking an equitable adjustment. Nowhere does the written opposition assert that MassDOT agreed to amend the contract to eliminate these requirements. J.F. White proffered that assertion only during oral argument
A party that opposes a motion in the Superior Court must submit a memorandum “that includes a statement of reasons, with supporting authorities, that the motion should not be allowed.” Sup. Ct. Rule 9A(a)(2). This ensures that the opposing party provides sufficient notice of and support for its arguments and that the moving party has the opportunity to respond in writing in a short reply memorandum. One of the purposes of Rule 9A is to prevent motion practice by ambush.
Parties therefore waive issues and arguments that they do not raise and develop in their written memoranda, and instead raise for the first time at oral argument. See Commonwealth v. Pfeiffer, 492 Mass. 440, 457 (2023) (argument raised for first time at oral argument, in violation of rule requiring that parties’ contentions must be presented in written brief, is waived); accord, e.g., Board of Reg. in Med. v. Doe, 457 Mass. 738, 743 n.12 (2010).
Second, in any case, J.F. White has not mustered any evidence that could support a finding that MassDOT agreed to modify the contract to eliminate equitable adjustment notice requirements that are established in part by G.L. c. 30, § 39N.
“A valid contract modification requires mutual assent and consideration.” Okerman v. VA Software Corp., 69 Mass. App. Ct. 771, 781 (2007). Mutual assent to a contract amendment requires that one party provide notice or otherwise
 
                                                            -10-
 
make clear that it is “extending an offer to modify the existing contract,” followed by an indication of express or implied assent by the other party. Magliozzi v. P&T Container Service Co., Inc., 34 Mass. App. Ct. 591, 595 (1993); accord Okerman, supra.
The record includes detailed minutes from the June 9, 2019, meeting. There is no reference in those minutes to anything that could be construed as a discussion about modifying, never mind as an agreement to modify, the explicit contract requirements. The record also includes a follow-up letter that MassDOT sent on June 12, 2019. It also says nothing suggesting that MassDOT had agreed to modify or amend the contract to eliminate the written notice requirements for an equitable adjustment. Nor has J.F. White presented any other evidence suggesting that MassDOT ever proposed or accepted such a contract amendment.
J.F. White cannot defeat summary judgment by asserting that there is a triable issue as to whether MassDOT agreed to amend the contract without providing evidence to back that up. See Cookson Group plc v. Flynn, 52 Mass. App. Ct. 909, 911 (2001) (“mere assertions of the existence of disputed facts without evidentiary support cannot defeat [a] summary judgment motion”) (quoting Bergendahl v. Massachusetts Elec. Co., 45 Mass. App. Ct. 715, 718–719, rev. denied, 428 Mass. 1111 (1998), cert. denied, 528 U.S. 929 (1999)).
1.4. No Violation of the Implied Covenant. J.F. White cannot evade its contractual notice obligations by bringing suit under the implied covenant of good faith and fair dealing rather than under the express terms of the contract. MassDOT is therefore also entitled to summary judgment on Count Four.
Every contract includes an implied covenant of good faith and fair dealing, which provides “that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.” Weiler v. PortfolioScope, Inc., 469 Mass. 75, 82 (2014), quoting Druker v. Roland Wm. Jutras Assocs., Inc., 370 Mass. 383, 385 (1976).
“The scope of the covenant is only as broad as the contract that governs the particular relationship.” Wortis v. Trustees of Tufts College, 493 Mass. 648, 671 (2024), quoting Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 385 (2005). This implied covenant “does not create rights or duties beyond those the parties agreed to when they entered into the contract.” Boston Med. Ctr. Corp. v. Secretary of Executive Office of Health & Human Servs., 463 Mass. 447, 460 (2012),
 
                                                            -11-
 
quoting Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 680 (2011). Instead, it governs only “the manner in which existing contractual duties are performed.” Eigerman, 450 Mass. at 289.
Thus, the implied covenant does not create some new right for J.F. White to obtain an equitable adjustment for differing site conditions without complying with the statutory and contractual notice provisions.
J.F. White does not seem to disagree. Its written opposition does not address the implied covenant claim at all. J.F. White has therefore waived any argument against granting summary judgment in MassDOT’s favor on the implied covenant claim. Cf. Cary v. New England Organ Bank, 446 Mass. 270, 285 (2006) (issue waived where “plaintiffs never put the judge on notice that they opposed summary judgment on this theory”); accord Slater v. Traynor Mgmt., Inc., 101 Mass. App. Ct. 705, 715 (2022).
1.5. No Right to Quantum Meruit Compensation. J.F. White’s alternative claim seeking to recover for unjust enrichment on a “quantum meruit” theory fails for much the same reason. MassDOT is therefore entitled to summary judgment on Count Five.
Having failed to comply with the contractual notice provisions, J.F. White is not entitled to recover on a quantum meruit or unjust enrichment theory. See Glynn II, 21 Mass. App. Ct. at 394–395.
J.F. White concedes the point, as it has not opposed—and thus has waived any argument against—granting summary judgment on this claim. See Cary, 446 Mass. at 285; Slater, 101 Mass. App. Ct. at 715.
2. Defective Contract Documents Claims. MassDOT is also entitled to summary judgment in its favor on the claims that it provided defective contract documents and thereby breached the express terms of the contract (Count One) as well as implied warranty of the sufficiency of its plans and specifications (Count Two).
2.1. Breach of Contract Claim. In its complaint, J.F. White alleges that the plans and specifications provided by MassDOT “were defective in that the excavation for the specified culverts could not be achieved in conformity with both the contractually defined limits of excavation … and the applicable OSHA safety requirements.”
 
                                                            -12-
 
The contract provided that, if J.F. White “finds a conflict, error, discrepancy or omission in the Contract Document, or a discrepancy between the Contract Documents and any standard specification, manual, code, regulatory requirement of other Legal Requirement,” then J.F. White “shall promptly report such discrepancy in writing” to MassDOT. See General Conditions
§ 3.5.3. Furthermore, J.F. White had a contractual obligation to “obtain a written interpretation or clarification” from MassDOT “before preceding” with any work affected by an alleged defect in the Contract Documents. Id. § 3.5.4.
The summary judgment record establishes that the first time J.F. White provided notice that it believed it received defective contract document was in the May 4, 2020, letter, which was after J.F. White had completed its work to replace or clean the culverts covered by the contract.
J.F. White cannot recover for breach of contract on the basis of allegedly defective contract documents because it failed to provide notice of the alleged defects before doing the  work.  See  Chiappisi  v.  Granger  Contracting  Co.,  352 Mass. 174, 177–178 (1967).
Furthermore, as discussed above, J.F. White cannot recover on its claim in Count One for the independent reason that it failed to seek and obtain any change orders to increase the contract price to account for extra costs necessary because of defects in any contract documents. See General Conditions §§ 8.3.1, 8.3.3, 9.1.1, and 9.2.2.
2.2. Breach of Implied Warranty Claim. J.F. White’s parallel claim under the implied warranty of the Project plans and specifications fails for the same reasons.
In design-build projects like this one, the party that “furnishes plans and specifications for a contractor to follow – impliedly warrants their sufficiency for the purpose intended.” Coghlin Elec. Contractors, Inc. v. Gilbane Bldg. Co., 472 Mass. 549, 555–556 (2015), quoting Albert v. Commonwealth, 357 Mass. 306, 320 (1970). The parties’ contract therefore includes an implied warranty by MassDOT that the plans and specifications it provided to bidders were sufficient to complete the Project, and accurately described the kind and quantity of work that would be required. Id. This means that, if J.F. White can prove that it relied in good faith on the plans and specifications, there was some defect in the plans and specifications, and J.F. White incurred additional costs as a result, that would establish that MassDOT breached the contract by
 
                                                            -13-
 
violating its implied promise that the plans and specifications were sufficient. Coghlin Elec., supra, at 556–559.
But J.F. White’s failure to comply with the contractual requirement to “promptly report” any error or discrepancy in the contract documents bars its claim under this implied warranty. D. Federico Co., 11 Mass. App. Ct. at 252–253. And its failure to seek and obtain a change order, which is the only way to increase the contract price for reasons other than differing site conditions, bars this claim as well.
ORDER
Defendant’s motion for summary judgment is allowed. Final judgment shall enter dismissing all claims with prejudice and stating that Plaintiff shall recover nothing from Defendant.
/s/Kenneth W. Salinger Justice of the Superior Court
March 9, 2026